**RICHARDSON GREENSHIELDS SECURITIES, INC., Plaintiff,**

v.

**MUI–HIN LAU, Ho Sih Fong, Kau-Ying Lau, Ying Lup Lau, and Wai Yau Chi, Defendants.**

No. 84 Civ. 6134 (SWK).

United States District Court, S.D. New York.

Dec. 30, 1986.

---

Morgan, Lewis & Bockius by John Linsenmeyer, Peter G. McDonough, New York City, for plaintiff.

Carey & Deinoff by Michael Q. Carey, Julia S. Robbins, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action was commenced on August 24, 1984. It is brought in diversity pursuant to 28 U.S.C. § 1332. Plaintiff, a futures commission merchant, claims that the defendants owe deficit balances totalling $167,212.48, plus interest and attorneys' fees, on commodities futures trading accounts which they had established with plaintiff.

Plaintiff successfully applied for an order of attachment and a temporary restraining order against certain property of defendants pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure and Sections 6201 *et seq.* of the New York Civil Practice Law and Rules on November 19, 1986. Plaintiff also applied for an order to show cause converting the temporary restraining order into a preliminary injunction at that time. Plaintiff's order of attachment and temporary restraining order were extended through December 11, 1986 by this Court at a conference on December 1, 1986. Defendants' application for an order to show cause vacating plaintiff's temporary restraining order and order of attachment was denied from the bench on December 5, 1986. On December 8, 1986, plaintiff moved for an order confirming the order of attachment. This motion was heard at oral argument on December 15, 16, 17 and 22, 1986. This Court has now considered plaintiff's application to convert the temporary restraining order into a preliminary injunction and plaintiff's motion to confirm the order of attachment. For the reasons set forth below, plaintiff's application and motion to confirm are modified and, as modified, are granted.

## FACTS

Plaintiff, Richardson Greenshields Securities, Inc. ("Richardson"), is a duly registered futures commission merchant. Defendants (collectively, the "Laus") are former customers of Richardson. The Laus are all closely related. Ho Sih Fong is Mui-Hin Lau's wife; Kau-Ying Lau is Mui-Hin Lau's sister; Ying Lup Lau (also known as Michael Lau) is Mui-Hin Lau's son; and Wai Yau Chi is Michael Lau's wife. None of the Laus are American citizens, but Michael Lau and his wife live in the United States.

Richardson's account documents show that four commodities futures trading accounts were opened on December 30, 1982, one each in the names of Mui-Hin Lau, Ho Sih Fong, and Kau-Ying Lau, and one in the joint names of Michael Lau and his

wife, Wai Yau Chi. Identical accounts formerly were maintained with another futures commission merchant, Prudential Bache Securities, Inc. ("Bache"); these accounts were closed and the Richardson accounts were opened when the Laus account representative at Bache became an account representative at Richardson. The Richardson agreements, acknowledgments and Powers of Attorney are identical in nature and scope to the predecessor accounts with Bache, and it is undisputed that the predecessor account documents are authentic and were opened by each of the Laus in the same names as the Richardson accounts.

Each Richardson account is evidenced by a signed Customer's Agreement, a signed acknowledgment that the customers had read and understood the Risk Disclosure Statement, and a Power of Attorney (except for Michael Lau's account for which there was no Power of Attorney). Pursuant to the terms of each Customer Agreement, the customer is liable for (1) any deficits in his account; (2) interest and service charges on any deficit balance in his account at the rate customarily charged by plaintiff; and (3) costs and attorney's fees incurred by Richardson in collecting any such deficit. Some of the forms are not complete; for example, one form lacks a date.

In addition to maintaining his own joint account with his wife, Michael Lau was given Powers of Attorney over Mui-Hin Lau's and Kau-Ying Lau's accounts and authority to make trades on their behalves at the time of execution of the Customer Agreements. Daniel Lau, who neither opened a commodities futures trading account with Richardson, nor is a defendant in this action, was given a Power of Attorney over Ho Sih Fong's account, as well as authority to make trades on her behalf, and paid Richardson the initial balances due on each of the Lau accounts.

On July 9, 1984, Richardson began liquidating each of the Lau accounts following nonpayment of monies owed to Richardson and informed Daniel Lau of this action by telex on the same day. On July 24, 1984, plaintiff demanded payment of the Lau deficit accounts from Daniel Lau. As of July 31, 1984, the Lau accounts contained deficit balances totalling $167,212.48.

Mui-Hin Lau also had deposited two securities, 1500 shares of Boeing and 200 shares of Fisher Foods, in a Richardson securities account. These stocks were seized by Richardson. The Boeing stock was liquidated for approximately $70,000, and that money is maintained in a noninterest bearing securities account at Richardson. The Fisher Foods stock, which is of nominal value, has not been liquidated. Richardson commenced this action on August 24, 1984.

Although the Richardson account representative communicated directly with Mui-Hin Lau on at least one occasion during the course of the customer agreements with Richardson, defendants now claim that Michael Lau and Daniel Lau forged the signatures of Mui-Hin Lau, Ho Sih Fong and Kau-Ying Lau, their father, mother and aunt, on their account opening documents and that these signatures were unauthorized.

Richardson determined that the defendants (except Wai Yau Chi, Michael Lau's wife) are shareholders in the United Orient Bank in New York City, that Daniel Lau is a director of the bank, that the Lau family intends to sell a total of 356,422 shares which they hold in the bank—102,046 shares of which are owned by the defendants themselves—to a citizen of the Dominican Republic for an aggregate purchase price of $3,296,908.13, and that the sale of the Lau family shares in the United Orient Bank was imminent. Richardson then sought and received from this Court an order of attachment and a temporary restraining order on November 19, 1986, restraining the Laus from transferring their assets out of this Court's jurisdiction.

## DISCUSSION

### The Preliminary Injunction

In the Second Circuit a preliminary injunction will issue only

where the plaintiff establishes possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir.1979). Plaintiff has met both prongs of the Second Circuit test.

Plaintiff has demonstrated that it will suffer irreparable harm unless the preliminary injunction issues. Defendants are aliens. Three of the defendants are also non-domiciliaries. Defendants' shares in the United Orient Bank are the only known and unencumbered assets which would be available for fully satisfying an adverse judgment.[1] If defendants are permitted to dispose of these assets, Richardson will be unable to satisfy any judgment rendered against the Laus.[2]

Plaintiff also has made a strong showing that it is likely to succeed on the merits. Plaintiff has shown the existence of the customer agreements for defendants' commodities futures trading accounts, defendants' breach of those agreements by nonpayment of outstanding deficit balances, plaintiff's demand for payment and defendants' refusal. Defendants argue that plaintiff cannot demonstrate that Mui-Hin Lau, Ho Sih Fong and Wai Yau Chi actually signed their Richardson account agreements and that as a result Richardson is

unlikely to succeed as to these defendants. Defendants' arguments lack merit. Whether the Laus individually signed each customer agreement or whether Michael and Daniel Lau signed them pursuant to Powers of Attorney or on a theory of apparent or implied authority, Richardson has demonstrated that the accounts were traded by Michael Lau with Mui-Hin Lau's knowledge and apparent consent. As a result, defendants have failed to assert any credible defense to plaintiff's claims.

Alternatively, plaintiff has shown a fair ground for litigation and a balance of hardships tipping decidedly in its favor. Plaintiff has demonstrated a prima facie case for breach of its commodities futures trading account agreements with defendants. If the injunction is not granted, plaintiff will be unable to recover on its claim and will suffer severe hardship as a result. On the other hand, the common stock of United Orient Bank is not listed on a national exchange, nor is it regularly traded in the over-the-counter market. There is no ready market for this stock, and no buyers other than the instant purchaser. Enjoining sale of defendants' shares may frustrate the sale and affect the interests of fourteen other shareholders who are not parties to this action.[3] The temporary restraining order will be modified to permit the sale but to enjoin defendants from dissipating an amount of the proceeds from the sale sufficient to satisfy plaintiff's claims, as is discussed further in the suc-

---

1. While there has been testimony at the hearing that Mui-Hin Lau owns title to undeveloped real property in California, neither Michael nor Daniel Lau were able to testify that there were no encumbrances on that property at this time.

2. It should be noted that, on the one hand, defendants contend that Mui-Hin Lau's, Ho Sih Fong's and Kau Ying Lau's assets—especially stocks and bank accounts—should be treated individually in determining whether sufficient assets other than the United Orient Bank stock can be attached to satisfy a potential judgment for Richardson against each of these defendants. Defendants conveniently ignore reference to Michael Lau's or his wife's assets in their argument. On the other hand, defendants have also argued that the Lau's stock assets in the

United Orient Bank are all beneficially owned by the family patriarch Mui-Hin Lau who controls the disposition of these assets despite that the stock is listed in the names of various family members. Defendants simply cannot have it both ways as it suits their purposes. Ultimate liability will be sorted out at trial. In the interim, however, the United Orient Bank stock remains the only known and unencumbered assets available to satisfy an adverse judgment.

3. It should be noted that Michael and Daniel Lau testified at the hearing that all of the stock actually belonged to Mui-Hin Lau, their father, who had merely placed the stock in the names of different family members. If this is true, defendants' argument of irreparable harm loses much of its force.

ceeding sections of this opinion. As a result, defendants will not be prejudiced and the balance of hardships tips decidedly in plaintiff's favor.

Accordingly, plaintiff has fulfilled either part of the second prong of the Second Circuit test, and it is appropriate that a preliminary injunction issue.

*The Order of Attachment*

■ To succeed on a motion to confirm an order of attachment issued pursuant to Rule 64 of the Federal Rules of Civil Procedure and Article 62 of the New York Civil Practice Law and Rules, plaintiff must establish (1) a ground for the attachment; (2) the existence of a cause of action; (3) the probability that it will succeed on the merits; (4) the need for continuing the levy, and (5) the probability that the amount demanded exceeds their counterclaims. *Merrill Lynch Futures, Inc. v. Kelly*, 585 F.Supp. 1245, 1249 (S.D.N.Y.1984).

As discussed above, plaintiff has established the existence of a cause of action for breach of its commodities futures agreement with defendants and the probability that it will succeed on the merits. In addition, there are at present no counterclaims in this action.

■ A ground for attachment exists when a defendant is a nondomiciliary residing without the state. N.Y.Civ.Prac.Law § 6201(1) (McKinney 1980). It is not disputed that defendants Mui-Hin Lau, Ho Sih Fong and Kau-Ying Lau are nondomiciliaries who do not reside in New York. Accordingly, a ground for attachment exists as to these defendants.

Michael Lau is a resident of New York, and this ground for attachment is inappropriate for him. A ground for attachment also exists when a defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, is about to assign, dispose of, encumber or secrete property. N.Y.Civ.Prac.Law § 6201(3). Attachment as to Michael Lau, as well as to his father, mother and aunt, is proper on this ground if defendants are about to dispose of their stock in the United Orient Bank with intent to defraud their creditors or to frustrate the enforcement of a judgment.

■ Richardson bears the burden of establishing the grounds for the attachment. N.Y.Civ.Prac.Law § 6223(b). Merely demonstrating an intent to dispose of property, without more, is not enough. *See Laco X–Ray Systems, Inc. v. Fingerhut*, 88 A.D.2d 425, 429, 453 N.Y.S.2d 757, 760 (2d Dept.1982). It is incumbent upon Richardson to demonstrate that defendants are acting with an intent to defraud. Fraud "is not lightly inferred, and the moving papers must contain evidentiary facts— as opposed to conclusions—proving the fraud." McLaughlin, Practice Commentaries C6201:4, N.Y.Civ.Prac.Law § 6201. Richardson has demonstrated the Lau family's intent to imminently sell 356,422 shares in the United Orient Bank for an aggregate purchase price of $3,296,908.13, a portion of which represents the only known, unencumbered assets of defendants within this Court's jurisdiction. In addition, Richardson has offered as proof that the Laus are not citizens of the United States, that Michael Lau represented to Richardson in 1984 that he had no money, that the Laus have recently employed delaying tactics in order to stall this litigation while the stock sale is consummated, that immediately following Richardson's disclosure that it intended to seek an order of attachment, an attorney or the United Orient Bank inquired as to the status of the attachment proceedings, that the Laus' bank accounts have had small amounts on deposit during the pendency of this action when previously large amounts were maintained on deposit, and that defendants have rebuffed Richardson's efforts to assure adequate security by agreeing to place a portion of the monies realized from the stock sale in escrow for satisfaction of the potential judgment.

Defendants, on the other hand, claim that these circumstances are not interrelated and do not add up to the requisite fraudulent intent, that the Laus did not initiate

the stock sale, and that they had no intent to defraud. Given the facts put forth by Richardson, the surrounding circumstances of this litigation and the Laus' rather bizarre defense which devolved at the hearing—namely, that Michael and Daniel Lau had fraudulently opened the Richardson accounts without their father's, mother's or aunt's knowledge despite the fact that they acknowledge that their father met with the Richardson account representative on at least one occasion subsequent to the opening of the Richardson accounts—this Court finds that Richardson has sustained its burden of proving the fraudulent intent necessary for this ground of attachment to be appropriate for Michael Lau, as well as for Mui-Hin Lau, Ho Sih Fong and Kau-Ying Lau.

*Equitable Considerations*

Defendants contend that they will suffer severe hardship if the United Orient Bank stock sale is not permitted to occur, that they know of no other willing purchasers for the stock, and that prohibiting the proposed $3.3 million sale is completely out of proportion to the amount of any judgment plaintiffs would recover should they prevail on the merits. However, despite this Court's suggestions and plaintiff's often stated willingness to not oppose the stock sale as long as a portion of the proceeds from the sale are held in escrow pending the outcome of this litigation, defendants have steadfastly refused to consider such an equitable settlement absent court order.

Defendants' accounts contained the following deficit balances upon liquidation:

| | |
|---|---|
| Mui-Hin Lau | $28,362.60 |
| Ho Sih Fong | 62,474.96 |
| Kau-Ying Lau | 16,626.12 |
| Michael Lau and Wai Yau Chi | 59,748.80 |

**4.** The figures cited in the body of this opinion are taken from Attachment A to the McDonough Affidavit in Support of Ex Parte Motion for Attachment and Temporary Restraining Order. Attachment A is the application of Mr. Leonel L. Almonte to Purchase Shares in United Orient Bank. These figures are not the same as the figures recited in the Garnishee's Statement, which are as follows:

Plaintiff's claims for damages amount to a total of $167,212.48 plus interest and attorneys' fees. On the other hand, plaintiff already has seized approximately $70,000 in Lau assets which Richardson now holds. Defendants stand to realize the following amounts from the block sale of United Orient Bank stock:[4]

| | | |
|---|---|---|
| Mui-Hin Lau and Ho Sih Fong | 53,748 shares | $497,169.00 |
| Kau-Ying Lau | 30,000 shares | 277,500.00 |
| Michael Lau | 18,298 shares | 169,256.50 |

Defendants' share of the sale of United Orient Bank stock should result in a total of $943,925.50; the entire sale should yield $3,296,908.13.

Because this Court realizes that a preliminary injunction banning the sale of the stock and confirmation of the attachment of the shares is a harsh remedy which may affect fourteen stockholders[5] other than the defendants, the Court will modify the temporary restraining order and order of attachment to permit the block sale of United Orient Bank stock but will require attachment of $250,000 of the proceeds from the sale to be held in an interest bearing escrow account until this litigation is resolved. In addition, plaintiff is directed to transfer the approximately $70,000 in proceeds from the sale of the Boeing stock from the noninterest bearing account in which it currently has been placed to an interest bearing account for the pendency of this action.

CONCLUSIONS

Richardson's motion, brought on by order to show cause, converting the temporary restraining order into a preliminary injunction and Richardson's motion to confirm the attachment are hereby MOD-

| Name | | | Number of Shares | | |
|---|---|---|---|---|---|
| Mui-Hin Lau | | | 35,450 | | |
| Mui-Hin | Lau | | | jointly | with |
| Ying Lup Lau | | | 18,298 | | |
| Ho | Sih | Fong | | jointly | with |
| Kau-Ying Lau | | | 30,000 | | |
| Ying Lup Lau | | | 300 | | |
| Ying | Lup | Lau | | jointly | with |
| Lau Sin Mui | | | 18,298 | | |

**5.** See Endnote 2.

IFIED as described herein and, as modified, are GRANTED. It is hereby further

ORDERED that the defendants, their agents, and all others acting in concert or participation with them, during the pendency of this action are permitted to sell their shares in the United Orient Bank to Leonel Almonte in the manner described in the papers and affidavits submitted for this matter but are preliminarily enjoined from making or causing to be made any conveyance, assignment, payment or other transfer of $250,000 of the proceeds realized from the sale of the Lau family stock in the United Orient Bank; and it is further

ORDERED, that the United States Marshal for the Southern District of New York release for sale defendants' shares in the United Orient Bank but continue to levy within his jurisdiction, at any time before final judgment, upon $250,000 of the cash proceeds realized from the sale of such stock, as will satisfy plaintiff's demand of $28,362.60 from Mui-Hin Lau, $62,474.96 from Ho Sih Fong, $16,626.12 from Kau-Ying Lau, and $59,748.80 from Michael Lau, for an aggregate demand of $167,212.48, plus interest, costs, attorneys' fees, disbursements and said Marshal's fees and expenses, and that the Marshal proceed hereon in the manner required by law; and it is further

ORDERED that, should the sale of the Lau family stock in the United Orient Bank to Leonel Almonte not be intended to result in a minimum of $250,000 in unencumbered cash proceeds, then the defendants, their agents, and all others acting in concert or participation with them, during the pendency of this action are preliminarily enjoined from selling their shares in the United Orient Bank; and in that event, that the United States Marshal for the Southern District of New York continue to levy within his jurisdiction, at any time before final judgment, upon defendants' shares in the United Orient Bank, and that the Marshal proceed hereon in the manner required by law; and it is further

ORDERED that this preliminary injunction and order of attachment shall remain in effect until the underlying issues in the case are resolved or are otherwise modified by this Court.

SO ORDERED.